POE *v.* WALKER.

Opinion delivered April 20, 1931.

*Charles B. Thweatt* and *Tom Poe,* for appellant.
*Carmichael & Hendricks,* for appellee.

SMITH, J.   Suits were brought by the American Southern Trust Company, hereinafter referred to as the bank, against Sam T. and Tom Poe to recover on notes executed by them to the bank's order, and to foreclose deeds of trust securing the notes, which were consolidated and heard together.   The execution of the notes was admitted, and the defendants alleged their willingness to pay the balance due on them after proper credits were allowed, and the extent and value of these credits was the controlling question in the trial of the case in the court below.

The defendants practiced law as partners, and had been previously employed by the bank as attorneys.   Sam T. Poe, the senior member of the law firm, was also employed by the bank in connection with loans made by the bank to certain farmers engaged in the culture of rice.   This latter employment was by the day, and Sam Poe was paid $25 per day when so employed.   So much of Sam Poe's time was required in connection with the loans to the rice farmers that a new contract was made between him and the bank, which was evidenced by the following letter:

"Little Rock, Arkansas, February 17, 1925.
"Dear Mr. Poe:

"Mr. Hicks informs me that he has made a deal with you on a basis of $7,200 per year starting with the

first of January, and as we have already paid you $650 we have today credited your account with $250, bringing your salary up the close of business the 14th, and each pay day hereafter your account will be credited with $300," signed by the cashier of the bank.

The parties operated under the contract evidenced by this letter during the remainder of the year 1925, and, without any additional contract, continued their relations until June 14, 1926, at which time it was terminated, and the principal question in the case is the one of fact whether the contract was then rescinded and terminated by the mutual consent of the parties or by the act of the bank in wrongfully discharging Poe.

In addition to his salary, Poe was allowed an expense account, and a disagreement arose between Hicks, a vice president of the bank, and Poe concerning the account. Hicks contended that improper and excessive expense charges were being made, although no attempt was made at the trial from which this appeal comes to sustain that contention. On the contrary, it was disclaimed that excessive items of expense had been charged. But it is certain there was such a controversy, and we think it also certain that, during the discussion of that controversy on June 14, 1926, Poe became angered and said that if his services were not satisfactory he would resign, and Hicks said the services had ceased to be satisfactory, and the offered resignation was accepted. It is equally as certain that after reflection Poe repented his haste and anger, for on the next day he wrote a letter in which he proposed to resume his relation as an employee, but this offer was not accepted.

By way of a set-off against the demands of the bank, it was alleged that Sam Poe was entitled to a credit to the extent of the balance of the 1926 salary, inasmuch as Poe had been unable to obtain other similar employment during the remainder of that year. It was also alleged that the law firm of which Sam and Tom Poe were members had been employed by the bank to make certain collections, and that this employment was apart

from and had no relation to the annual employment of Sam Poe, and credit for these professional services was prayed.

The court below allowed the claim for salary for only the month of June, but allowed the attorney's fees substantially as claimed. This finding of fact appears to have been made on February 17, 1930, but no notation thereof in writing was made upon any court record until May 9, 1930, at which time a decree was entered conforming to this finding, in which the court adjudged the balance due the bank after all proper credits had been allowed, and a foreclosure of the deeds of trust securing this balance was decreed, and from this decree the Poes have appealed, and the bank has prayed a cross-appeal. The transcript on the appeal was filed in this court on November 8, 1930.

It is also made to appear that subsequent to the rendition of the decree here appealed from the commissioner of the court who had been appointed for that purpose sold the property, under the authority of the decree of foreclosure, on September 5, 1930, and at this sale McDonald Poe, a member of the Poe law firm but not a party to the suit, bid the total amount of the debt, interest and costs, and became the purchaser of the property at said sale. The decree required the purchaser to execute bond, but the purchaser at the sale and his security declined to execute the bond until the bank had credited upon the decree an item of $1,250.

It is first insisted by the bank for the dismissal of the appeal that it was not taken in time, and, second, that an appeal from the decree could not be prosecuted for the reason that benefits under it had been accepted.

We do not think the appeal should be dismissed for either of the reasons assigned for that action. While it does appear that the cause was submitted to and heard by the court on February 17, 1930, at which time the court's finding on the facts was indicated, yet it also appears that no memorandum was made in the order

book or judge's docket or on any other record of the Pulaski Chancery Court showing a final disposition of the case and the relief granted until May 9, 1930, when the decree to be entered was approved by the presiding judge and entered of record.

It is required by § 2140, Crawford & Moses' Digest, that appeals and writs of error shall be prosecuted within six months next after the rendition of the judgment, order or decree sought to be reviewed, and this statute was construed in the case of *Chatfield* v. *Jarrett,* 108 Ark. 523, 158 S. W. 146, to mean that the time for appeal begins to run from the date of the rendition or pronouncement of the judgment, order or decree, and not from the entry thereof upon the records of the court. But by § 6276, Crawford & Moses' Digest, it is provided that "the judgment must be entered on the order book, and specify clearly the relief granted or other determination of the action." In the recent case of *McConnell* v. *Bourland,* 175 Ark. 253, 299 S. W. 44, we said that: "There are authorities to the contrary, but we hold that, when a decision has been reached, announced by the court and sufficient memorandum on the chancery docket to show a final settlement of the case, it is a final judgment although it has not been spread in full upon the record." Here the first written memorandum prepared or authorized by the presiding judge was written May 9, 1930, and, as the appeal was perfected within six months of that date, we hold that it was taken within the time required by § 2140, Crawford & Moses' Digest.

We are also of the opinion that the appellants are not barred from prosecuting this appeal for the reason that they have accepted benefits under the decree appealed from. This insistence is based upon two circumstances. The first is that, subsequent to the rendition of the decree appealed from, the bank paid the Poes $1,250, which was indorsed as a credit upon the judgment. But it also appears that this item of $1,250 was for a fee which had become due after the rendition of the decree and which was not involved in the litigation.

If this fee had not been credited upon the judgment, it would have been paid in cash by the bank to the Poes, and this without regard to the decision of the questions involved in this appeal. The appellants do not by this appeal question the correctness of the sum adjudged to be due by them to the bank. This they must pay in any event. They only insist that the court did not allow them sufficient credits, and, as the $1,250 fee became due after the rendition of the judgment here appealed from, it is not inconsistent for an appeal to be prosecuted from the judgment, although the $1,250 credit has been indorsed upon it.

The second insistence is that, having purchased the property decreed to be sold at a price equal to the total amount of the debt, interest and all costs, there can be no appeal. It is not seriously questioned that McDonald Poe bid in the property at the foreclosure sale for the benefit of Sam T. Poe, and it is also conceded that the bid, which was secured by a bond given by McDonald Poe, equals the entire debt and interest, together with all the costs, but this does not bar the Poes from prosecuting the appeal. They were unable to give the supersedeas bond required by the statute, and adopted this method of protecting their equity in the property ordered to be sold. This they had the right to do without waiving the right to appeal from the decree under the authority of which the property had been sold.

At § 47, chapter Appeal and Error, 2 R. C. L., page 65, it is said: "As a general rule, however, one against whom a judgment or decree for a sum of money has been rendered does not, by voluntarily paying or satisfying it, waive or lose his right to review it upon a writ of error or appeal unless such payment or satisfaction was by way of compromise or with an agreement not to pursue an appeal or writ of error. This rule has been placed upon the ground that one against whom a judgment is entered, if he fails to satisfy it, must expect to see his property seized and sold at a sacrifice, and it

is difficult to conceive how his payment of the judgment can give rise to any estoppel against seeking to avoid it for error. The better view accordingly is that, though the execution has not issued, the payment of a judgment must be regarded as compulsory, and therefore as not releasing errors, nor depriving the payor of the right to appeal.''

We conclude, therefore, that the case is before us properly for a decision upon its merits.

We think that the appellant Sam Poe is correct in his contention that his employment was by the year. The letter to him from the cashier of the bank under date February 17, 1925, set out above, expressly states that Poe had been employed for the year 1925, at an annual salary of $7,200, payable in semi-monthly installments, and, without additional understanding or agreement, the parties continued to operate under this contract until in June, 1926, up to which time the semi-monthly payments were regularly made as they had been during the year 1925.

In the instant case, as in the case of *Moline Lumber Co.* v. *Harrison,* 128 Ark. 260, 194 S. W. 25, 11 A. L. R. 466, there was no proof of custom or usage with reference to the period of employment for this character of service, and we must therefore construe this letter to determine whether it constituted a contract for a period of service for a year, or was merely an employment at will. We reviewed the authorities, to which we must look for aid in the construction of this letter, in the Moline Lumber Co. case, *supra,* and the division in the authorities was there stated, but we concluded that ''*  *  * the weight of authority is declared to be in favor of the rule that a hiring at so much a year, month or week is, in the absence of any other consideration impairing the force of the circumstances, sufficient to sustain a finding that the hiring was for that period.''

We conclude, therefore, that Poe was employed by the year, and not at will, and, as he was permitted to

enter upon a second year without additional contract, the presumption is that he did so under a renewal or extension of the original contract. Our Moline Lumber Company case is annotated in 11 A. L. R. 466, the annotator's note extending from page 469 to page 486.

But, while Poe's contractual rights are referable to the letter quoted, there is no reason why that contract may not have been rescinded, and we have concluded that it was rescinded. This was no doubt done in anger, but it was nevertheless done. A disagreement had arisen between Poe and Hicks, as the representative of the bank. Hicks thought that Poe's expense account was excessive, and, while he may have been mistaken as to the grounds upon which he had reached this conclusion, he had become dissatisfied with Poe's services, and he so advised Poe, who stated that if his services were not satisfactory he would quit, and this statement of Poe was evidently considered a resignation and treated as such. There can be no question about the sufficiency of the consideration to support the rescission. Poe's agreement to represent the bank in the matter of the farm loans was a sufficient consideration to support the contract on the part of the bank to pay him $7,200 a year for that service, and the release of Poe from this obligation was a sufficient consideration to support the rescission of the contract. It is, no doubt, true that in the discussion of their differences both Poe and Hicks had become somewhat irritated at each other, but this is no reason for setting aside a valid contract, executed by competent parties, upon a sufficient consideration, nor does the fact that Poe, upon further reflection, decided to withdraw his resignation, affect the case. The resignation had been tendered and accepted, and the contract was therefore at an end.

Upon the question of the attorney's fees, which is raised by the cross-appeal, it may be said that the undisputed testimony shows that the services were actually rendered, and the compensation was fixed upon a

*quantum meruit* basis, there being no express contract as to the amount of the compensation, and we are unable to say that the finding of the chancellor is contrary to the preponderance of the evidence.

One of the cases in which the Poes claimed and were allowed a fee is referred to as the Murray C. Smith case. In this case a fee of $250 was claimed for the recovery of certain real estate. When the bank failed to pay the fee charged in this case, the Poes sued and recovered judgment for the amount thereof, and caused the land which they had recovered to be sold under an execution, and they became the purchasers at the execution sale. But the Poes assert that they were only attempting to collect the fee, and that they have no intention of trying to acquire the title to the land against the bank if their fee is allowed. The court below treated the title as being in the bank and allowed the fee, thus, in effect, treating the judgment of the circuit court and the sale thereunder as a nullity. This action appears to accord with the equities of the case.

Upon the whole case, we are unable to say that any of the findings of fact upon which the decree was based are contrary to the preponderance of the evidence, and the decree must therefore be affirmed, and it is so ordered.

HART, C. J., and HUMPHREYS, J., dissent.