DARLING v. DENT.

Opinion delivered March 4, 1907.

1. MARRIAGE—VALIDITY AT COMMON LAW.—Judicial notice is taken that common-law marriages consummated without formal ceremony or

the procurement of a license are held to be valid in the State of Texas. (Page 80.)

2. Same—what constitutes at common law.—By the common law a mutual present consent of competent parties, in whatever form or with no formalities constitutes marriage. (Page 81.)

3. Instructions—effect of conflict.—It is prejudicial error for the court to give instructions which are directly conflicting and calculated to mislead the jury. (Page 81.)

4. Marriage—presumption as to continuance of illicit relationship.—While is is true that if it be shown that the relationship between a man and woman was illicit in the beginning, the burden is on those asserting a subsequent marriage agreement to show that such an agreement was entered into, there is no presumption that the relationship continued to be illicit. (Page 82.)

5. Same—presumption.—Where a man and woman are living together as husband and wife, the law presumes that they are married. (Page 82.)

Appeal from Woodruff Circuit Court; *H. N. Hutton,* Judge; reversed.

*J. T. Patterson* and *J. F. Summers,* for appellants.

1. Marriage is a civil contract, the validity of which depends, not on forms, ceremonies or witnesses, but upon the consent of competent parties only. Kirby's Digest, § 5171; 2 Greenleaf on Ev. § 460; 1 Bishop on Mar. & Div. § § 435, 449; 96 U. S. 82. Where parties have lived together as husband and wife, acknowledging themselves to be such, and reputed to be such among their relatives and friends, the law will presume, in the absence of other evidence, that they have been legally married. 19 Am. & Eng. Enc. of Law (2 Ed.), 1204-5; 56 Am. Dec. 208; 22 *Id.* 156, 157; *Id.* 41; *Id.* 563; 58 *Id.* 758; 19 *Id.* 703; 92 *Id.* 713; 68 S. W. 727; 83 *Id.* 238. "Whatever be the form of ceremony, or, if there be no ceremony, if the parties agree presently to take each other for husband and wife, and from that time on live professedly in that relation, proof of these facts would be sufficient to constitute proof of a marriage binding on the parties," etc. 31 Mich. 130; 28 Ark. 22.

2. Every intendment of law is in favor of matrimony. A marriage having been shown in evidence, whether regular or irregular, and whatever the form of the proofs, the law raises a presumption of its legality, and this presumption increases with

the lapse of time through which the parties are cohabiting as husband and wife. 84 Tex. 411; 1 Bishop, Mar. & Div. (6 Ed.), § 459; 20 Tex. 732; 18 Tex. 102; 3 Tex. 433.

*H. F. Roleson* and *Harry M. Woods,* for appellees.

1. A mere illicit intercourse, though extending over a long period, can never have the effect of validating or consummating a marriage dependent upon cohabitation to complete it. Cohabitation and repute can never amount to marriage. It is "a mode of proving the fact of marriage, rather than a mode of contracting marriage." Rodgers on Dom. Rel. § 96. While cohabitation is always evidence tending to prove a marriage contract by inference or presumption, yet it need not be accepted as conclusive proof. It is always permissible to show that cohabitation, though apparently matrimonial, is really otherwise, and that the parties are living in illicit intercourse. *Id.* § 97; Bishop, Mar. & Div. § § 961, 962, 964; 7 L. R. A. 799; 1 N. W. 98; 28 Ark. 25.

2. While the law is ready to indulge all reasonable presumptions in favor of marriage and legitimate cohabitation, this rule is never extended to cases where the relations of the parties, in their origin, are illicit and unlawful. Where in its origin the relationship between the parties is illicit, there is no reason to presume, in the absence of an affirmative showing, that they have changed their mode of cohabitation, or have since married each other. The presumption of a continuance of such illicit relations is not affected because a disability of marriage, existing in one of the parties at the beginning of the relations, is subsequently removed, where no visible change in the manner of living is made to appear. Rodgers, Dom. Rel. § 99; *Id.* p. 68, note; 12 N. E. 737; 59 S. W. 284; 14 L. R. A. 364, and notes; 7 N. E. 408.

McCULLOCH, J. This is an action to recover a tract of land in Woodruff County, and the sole issue in this case is whether or not the plaintiffs are the legitimate children and heirs at law of Henry Darling; the legality of the marriage between their parents being disputed by the defendants. The jury found for the defendants on this issue, and the plaintiffs appealed.

Sallie Blackwood, the mother of the plaintiffs (who married again since the death of Darling), first intermarried with one

Williams in Woodruff County, and afterwards they separated, and she went to Texas with Darling. Williams went to Texas later, and died shortly after his arrival there. Mrs. Blackwood claims to have intermarried with Darling in Texas a day or two after the death of Williams; that they lived together in Texas as husband and wife for six or eight months, and then removed to Howard County, Arkansas, where they lived together until the death of Darling about eleven years later; that they were married in 1883, and Darling died in 1894. The plaintiffs were the issue of this union.

Mrs. Blackwood testified that Williams mistreated her, and that she and Darling went to Texas together for the purpose of procuring her divorce from Williams, and agreed to marry as soon as the divorce could be procured; that they lived near the town of St. Joe, and immediately after Williams's death they took the train and went to another town, and were married there at a hotel in the presence of a number of persons; that they remained there a day or two, and then went to Ft. Worth, Texas, and thence to a place called Roanoke, where they lived until they removed to Arkansas. She was unable to state the name of the town where they were married, or the names of any persons present. She did not know whether the marriage ceremony was performed by a minister of the gospel or a justice of the peace, or whether a license was procured, but testified that the usual marriage ceremony was performed by some one, either a minister or officer, and that he had some papers or a book in his hand from which he read. Her testimony was given by deposition more than twenty years after the alleged marriage occurred.

Several residents of Howard County, who knew them while they lived there, testified that they lived together as husband and wife, holding themselves out as such in the community, had children born, and were regarded as respectable people, and were generally regarded as husband and wife in the community where they lived. One of the witnesses testified that Darling asked him, on his death bed, to look after his wife and children after his death. Gertrude Darling, the eldest of the plaintiffs (about 19 years old), testified that from her earliest recollection her parents were regarded as husband and wife, and demeaned themselves as such.

The defendants introduced the depositions of the county clerks of several counties in the part of the State of Texas in which the alleged marriage is said to have taken place, and they testified that the marriage records of their respective counties did not show any marriage license having been issued to these parties. Other testimony was introduced tending to show that, prior to the death of Williams, this woman and Darling lived together as husband and wife, and also that she stated to certain parties after the death of Darling that they had never been legally married.

The court gave numerous instructions at the request of plaintiffs, and refused others asked by them, and gave the following, over their objection, at the request of the defendants:

"9. The jury are instructed that marriage is a civil contract entered into between a man and woman, both of whom are equally competent to enter into the relationship. It may be consummated by a form prescribed by statute or by some other formal method or by a formal agreement between the parties. Some of these methods are necessary to constitute marriage. Mere cohabitation, however long continued, does not constitute marriage. Such cohabitation is only an evidence to go to the jury toward proving the fact that at some time marriage was really performed. If in this case you find from the testimony that in fact no marriage ceremony was ever performed, then you will find against the interpleaders, regardless of how long cohabitation and holding each other out as husband and wife might have continued.

"10. If the jury find from the testimony that relations between Henry Darling and Mrs. Williams were illicit in their beginning, and that Mrs. Williams was incompetent to contract marriage by reason of having a living husband, then the law presumes that the relationship continued to be illicit. Such presumption would not be overcome by the fact of Williams's death and the continued cohabitation of the parties, but can be removed only by proof of an actual marriage."

The alleged marriage occurred in the State of Texas, where common-law marriages consummated without formal ceremony or the procurement of a license are held to be valid. *Cumby* v. *Henderson,* 6 Texas Civ. App. 519; *Ingersol* v. *McWillie,* 9 Tex.

Civ. App. 543; *Burks* v. *State* (Tex. Cr. App.), 94 S. W. 1040. We take knowledge judicially of the laws of other States (Kirby's Digest, § 7823), and the statutes of this State provide that "all marriages contracted without this State which would be valid by the laws of the State or country in which the same are consummated, and the parties then actually resided, shall be valid in all the courts in this State." Kirby's Digest, § 5177.

The burden was upon the plaintiffs to show that their parents were legally married, and the question then is, was the evidence sufficient to show marriage? Mrs. Blackwood testified that she and Darling were married in the presence of witnesses—that the usual marriage ceremony was performed, and that they formally announced that they took each other as husband and wife—but she did not know whether or not a license was ever procured. The marriage was valid without the license and without a formal ceremony of marriage.

"We have seen," says Mr. Bishop, "that by the law which precedes all statutes a mere mutual present consent of competent parties, expressed in whatever form, or with no formalities, constitutes marriage." Bishop on Marriage & Div. § 437. Judge Cooley, in delivering the opinion of the Supreme Court of Michigan in *Hutchins* v. *Kimmell*, 31 Mich. 130, which was quoted with approval by the Texas court in one of the cases cited above, said: "Whatever be the form of the ceremony, or if all ceremony was dispensed with, if the parties agree presently to take each other for husband and wife, and from that time on live professedly in that relation, proof of these facts would be sufficient to constitute proof of a marriage binding on the parties, which would subject them to legal penalties for a disregard of its obligations."

The court, therefore, erred in instructing the jury that if "in fact no marriage ceremony was ever performed," they should find against the plaintiffs, "regardless of how long cohabitation and holding each other out as husband and wife might have continued." This instruction was in direct conflict with some of the instructions given at the instance of plaintiffs, and was therefore calculated to mislead the jury. *Fletcher* v. *Eagle,* 74 Ark. 585; *St. Louis & N. Ark. R. Co.* v. *Midkiff,* 75 Ark. 263; *St. Louis, I. M. & Sou. Ry. Co.* v. *Luther Hitt,* 76 Ark. 224. The jury

might have rejected the testimony of Mrs. Blackwood (because of her inability to name the place of the alleged marriage ceremony or give the names of those present) that there was a formal marriage ceremony performed by a minister or officer in the presence of witnesses, and still have found that there was an agreement to marry entered into and consummated between her and Darling. The testimony warranted such a finding.

The tenth instruction given at the request of the defendants was also erroneous and prejudicial to plaintiffs. While it is true that if it be shown that the relations between Darling and Mrs. Williams were illicit in the beginning the burden is upon those asserting a valid marriage agreement to show that such an agreement was afterwards entered into, still there is no presumption that the relationship continued to be illicit. It is a matter of proof, and not of presumption, whether the relationship continued to be illicit or whether it was changed to a legal and moral status. Whatever presumptions are indulged are in favor of the legitimacy of such relationship. "Because of the high favor in which marriage is held by the law, we have transmitted to us the special maxim, *Semper praesumitur pro matrimonio,* always presume marriage. When a man and woman are living together as husband and wife, the law will hold them to be such, even against strong probabilities that they are not—or, when a ceremony of marriage is shown, there will be like presumption that it is valid —unless some distinct and special fact clearly appears in the particular case to the contrary." 1 Bishop, Mar. & Divorce, § 77.

On account of the errors of the court in giving these instructions, the judgment is reversed, and the cause remanded for a new trial.

BATTLE, J., absent.