McCONNELL v. BOURLAND.

Opinion delivered October 31, 1927.

1. REFORMATION OF INSTRUMENTS—NECESSITY OF REFORMING MORTGAGE.—In an action on notes secured by a mortgage, where the notes provided for 8 per cent. interest until maturity and thereafter for 10 per cent., and the mortgage recited that the notes bore 8 per cent., it was unnecessary to reform the mortgage to show that the notes bore 10 per cent. interest after maturity, since the notes were the evidence of the debt, and the mortgage was simply executed to secure their payment.

2. PLEADING—AMENDMENT OF COMPLAINT TO CONFORM TO PROOF.—In a suit to enforce notes secured by mortgage, where the complaint alleged that the notes bore 8 per cent. interest, but the notes

recited that 10 per cent. interest should be paid after maturity, the complaint will be treated as amended to conform to the proof.

3. Judgment—vacating after term.—In a suit on notes secured by a mortgage, where a decree for plaintiff for the amount sued for was entered during the October term, the chancellor was without authority to vacate or set aside the decree after the term, except on the statutory grounds or by consent of the parties.

4. Judgment—when final.—Any judgment or decree which finally disposes of issues between the parties, and settles and adjudicates all rights in controversy, is a final judgment; and when these things are done and the court adjourns, the court is without authority to vacate or set aside the judgment.

5. Judgment—rendition and entry distinguished.—Rendition of a judgment is a judicial act of the court in pronouncing sentence of law on the facts in controversy, as distinguished from the entry of the judgment, which is the ministerial act of spreading it at large on the record.

6. Judgment—when final.—When the decision has been reached, announced by the court, and a sufficient memorandum on the docket to show a final settlement of the case, it is a final judgment, although it has not been spread in full upon the record.

7. Appeal and error—jurisdiction of supreme court.—The Supreme Court has appellate jurisdiction only in cases specifically mentioned in the Constitution, which gives it appellate and supervisory jurisdiction over all inferior courts of law and equity.

8. Courts—jurisdiction of supreme court.—The Supreme Court has no original jurisdiction to compel by mandamus a clerk of an inferior court to put a judgment or decree on record, such authority being vested in the trial court.

9. Mandamus—compelling trial court to exercise jurisdiction.—Where the chancery court was mistaken in deciding that it had a right to set aside and vacate a decree after term, mandamus will lie to compel it to exercise its judgment and power in having its decree recorded.

Mandamus to Sebastian Chancery Court, Greenwood District; *J. V. Bourland,* Chancellor; writ granted.

*Rowe & Tatum,* for petitioner.

*George W. Johnson,* for respondent.

Mehaffy, J.　R. H. McConnell was the owner of certain notes secured by mortgage, and brought suit in the Sebastian Chancery Court, Greenwood District, to foreclose said mortgage. The note was given for real estate,

and was executed by J. R. Dunning and his wife, Grace Dunning, payable to R. A. Harper. The note and mortgage were transferred by said Harper to the plaintiff, R. H. McConnell, and, as above stated, McConnell brought a foreclosure suit.

The complaint in the foreclosure suit alleged that there were two notes secured by the mortgage, each for $750 at 8 per cent. per annum, the first note due January 1, 1921, and the second note due January 1, 1922. The notes were lost when the Farmers' Bank of Greenwood, Arkansas, was robbed, and could not be produced. On April 27, 1926, plaintiff was given 10 days in which to make the following amendment to his complaint: "Said notes bear 10 per cent. from maturity until paid."

There was a decree on October 18, 1926, for plaintiff for the amount sued for with interest, and, by agreement, sale and execution were suspended for 90 days, and the deputy clerk, Smith, was appointed commissioner to make the sale.

The chancery court adjourned on the 20th day of October, 1926, for the term.

It is undisputed that the chancery docket shows the above facts, and it is also undisputed that the attorneys for the plaintiff were to prepare precedent for the clerk and submit it to the opposing counsel for his examination, and, if he objected to it, it was to be submitted to the judge.

The defendant's attorney objected to the precedent because of some difference in the interest, and the judge refused to approve the precedent, and in the response of Judge Bourland he says that the notes are fully described in evidence by plaintiff in his own personal testimony and by other witnesses, and their testimony was not contradicted by any of the defendants, and the court accepted it as true, and still accepts it and believes it in fact to be true. And he also states that there was no doubt as to the tenor of the notes, although lost, but he says that the mortgage presented as an exhibit to the complaint does not contain a description of the notes mentioned,

and the mortgage did not show upon its terms that it had been executed to secure the notes described in the complaint and given in evidence, but, on the face of the mortgage, it had been given to secure other notes of a different description. The response then says that the particular difference between the description of the notes sued on and the notes described in the mortgage, while a relatively small difference, yet it was and is a vitally important legal difference, and the judge therefore thought that the mortgage should be reformed because of the difference between the testimony describing the notes and the description in the mortgage. And he states that the court could not, without supplementary complaint setting up a cause of action for reformation and serving on the parties, reform the mortgage.

The testimony had been taken, and convinced the court that it was correct, and that the interest should be as stated in the testimony and not as stated in the mortgage, and this testimony was all introduced and considered before the decree was taken. The record does not show when these conclusions were reached by the judge, except that it was after the decree had been rendered and the court had adjourned.

The plaintiffs then filed an amended complaint, and the response of Judge Bourland says that the amended complaint filed for the plaintiff shows on its face that they knew that the court had declared and made known to them the setting aside of such premature decree. That it shows by the mere filing that the premature decree had been by the court vacated. The judge further states in his response that the defendant administrator, by the permission of the court, objected to the hearing of the same, and demurred on the ground that the amended complaint did not state even an imperfect cause of action for reformation, because none of the defendants had been summoned thereon or otherwise had legal notice, and that the court sustained the objections and struck the complaint from the record.

The chancery docket does not show that the original decree was ever vacated or set aside, but the judge himself says that, while the docket does not formally show the setting aside of the decree, both the attorneys and their clients knew, before the October term, 1926, closed, it was his intention of vacating the decree, and knew that it had been done at the October term, 1926, and that this knowledge is confirmed by their own act in filing an amended complaint at the April term, 1927.

It is undisputed that the chancery docket shows that the plaintiff was allowed 10 days to amend his complaint; that within that time it was amended by interlineation, the amendment simply showing that the notes were for 10 per cent. after maturity, the plaintiff and his attorney both swearing that this amendment was made, and made before the case was tried, and it is not disputed. The attorney for the respondent simply states that he does not know when it was made.

It is also undisputed that on October 18, 1926, the chancery docket shows that there was a decree for the plaintiff for $2,441.30 at 10 per cent. It is also undisputed that the chancery docket shows that there was a foreclosure sale to be made on a credit of three months, and that Smith was appointed commissioner. The docket also shows that the sale and execution were suspended for 90 days.

After the complaint was amended, evidence was introduced to the effect that the notes bore interest at 10 per cent. after maturity, and the chancellor was convinced that this evidence was true, and he rendered his decision accordingly. Evidently the chancellor had overlooked the clause in the mortgage describing the notes, and, when he discovered that the mortgage said nothing about 10 per cent. after maturity, he concluded that that was a vital matter and that there would have to be a suit to reform the mortgage. And, according to his response, he told the parties this would have to be done, and he also states that he set aside the decree, although the chancery docket does not show anything about this.

We think the chancellor was in error in holding that there would have to be a reformation of the mortgage; that plaintiff had amended his complaint to speak the truth, and had introduced testimony to establish the allegation in his complaint, but, if the evidence had been admitted without objection, the complaint would have been considered amended to conform to the proof, even if there had been no amendment to the complaint. The notes themselves were the evidence of the indebtedness, and contained the evidence of the amount of interest, and the mortgage was simply executed to secure the payment of these notes. And while it described the notes as bearing interest at 8 per cent., without saying anything about 10 per cent. after maturity, this in no way affected plaintiff's right to recover on the notes and did not affect his right to have the land sold to pay the judgment, and there was no necessity for a reformation of the mortgage.

Mr. Johnson, attorney for respondent, in an affidavit states that shortly after the entry of an order the plaintiff's attorney presented a precedent to him for a decree in accordance with the rules of the chancery court. That he took the decree to his office and, after inspecting it, informed Mr. Rowe that it did not conform to the pleadings and the exhibits which were offered in evidence to support his decree, and that, if such precedent were finally approved and entered, he desired to appeal. That he also informed Judge Bourland of the variance, and that Judge Bourland informed him that the decree would be set aside. He further states that Judge Rowe informed him that he would take up the matter of the approval of the precedent, and that there was a rule that all decrees affecting titles to land had to be submitted to the counsel and then to the judge, if they did not agree before the judgments became effective. That he was present when Judge Bourland informed Mr. Rowe that he could not approve the precedent, that the proceeding would have to be started over by the filing of a supplemental complaint, and also states that he procured a

carbon copy of the complaint filed on the 21st day of April, that he filed an answer, and that he has no knowledge of when the change was made in the original complaint, but that it appears now that there was a change made.

It will be observed that Mr. Johnson does not claim to know when these changes were made, and the testimony of Judge Rowe and Mr. McConnell is positive on this question.

The chancellor says in his response, after he discovered the errors, that he expressed his determination to vacate the decree in the April term, 1927, which was done. But the 1927 term was another term of court, and the term at which the decree of foreclosure was rendered had ended. And the chancellor, after the end of the term at which the decision was made, had no authority to vacate or set aside the decree except for the grounds mentioned in the statutes or by the consent of the parties, and it is not shown that they consented to the setting aside of the decree. It is claimed that they knew it and filed a supplemental complaint, but there is no claim that they consented to setting aside the decree.

Our statute says: "A judgment is the final determination of the rights of the parties in an action." Section 6233, Crawford & Moses' Digest.

In this case it appears that, on the 18th day of October, the chancellor determined the amount, after hearing the testimony, gave judgment for that amount, ordered the sale of the described property, and, by consent of the parties, suspended the sale and execution for 90 days, and then the court adjourned, and the attempt to set aside or vacate the decree was at the next term of court.

It is stated that the rules of the chancery court require attorneys to submit precedents to the attorneys on the opposing sides, and, if there is an agreement, then the precedent is to be submitted to the chancellor for his approval. But this does not mean that there has not been a judgment or decree rendered. In fact, there

would be no occasion to prepare a precedent if there had been no decree. The precedent is to be prepared, and the chancellor passes upon the decree as to form. It would be the duty of the chancellor to order the clerk to put on record a decree in conformity with his decision. If the precedent presented was not satisfactory to him, of course he would not put that precedent on record. But it would be his duty to so change it as to make it conform to his findings, or to direct the clerk what to put on as a decree.

There is no claim that he took this case under advisement. The statute provides that the chancellor may take a case under advisement and render his decree in vacation, but it is not claimed that this case was taken under advisement, but the proof conclusively shows that the finding of the chancellor was made on the 18th day of October, 1926. After court adjourned the chancellor was without authority to set aside or vacate his findings, although he had authority to refuse to put on a precedent prepared by either party and to direct the clerk to put on record a decree in conformity with his findings.

After the lapse of the term of court following, October 16, 1908, that order became final, and could not be altered or changed except upon appeal. It could not thereafter be changed, set aside or altered by any further pleading, proceeding or trial in the lower court. * * * A judgment is an adjudication by a court by which the merits of a question are determined. There is no strict formality necessary in the language used to express the adjudication of the court. The judgment is tested by its substance rather than by its form. It is sufficient if the entry shows that the issue between the parties has been passed upon by the court and the merits of the question finally determined. * * * The rights of the parties to a suit are determined upon the trial thereof, which is defined by our statute to be a judicial examination of the issues, whether of law or fact, in action." Melton v. St. Louis, I. M. So. Ry. Co., 99 Ark. 433, 139 S. W. 289.

It has been said in speaking of the entry of judgments:

"That it will be regarded as sufficiently formal if it shows: (1) The relief granted; and (2) that the grant was made by the court in whose record the entry is written. In specifying the relief granted, the parties of and for whom it is given must, of course, be sufficiently identified. * * * It was said of the trial magistrate that he, in entering up his judgment, acted ministerially as clerk. The judgment was held to be regular. In the California case cited (*Lynch* v. *Kelly,* 41 Cal. 232), the justice had failed to enter a judgment upon the verdict of the jury. Subsequently he issued an execution upon the judgment. The question arose whether steps taken under the execution were not void in consequence of the judgment having been omitted. It was held that he might have been compelled, in a proper judicial proceeding, to have entered up the judgment, and that, though informal and irregular, the action under it was not void. * * * The entry of the judgment is the act of the clerk; its signature the act of the judge. But it is not an act involving the exercise of discretion. It is ministerial, and, if there appears no good reason to the contrary, the judge may be compelled to sign a record which, in law, it was his duty to sign unconditionally. The judgment which was rendered (if one was) was the act of the court. Its recordation having been complete, as it is alleged it was, it remained only for the judge to sign it." *Montgomery* v. *Viers,* 130 Ky. 694, 114 S. W. 251.

The court in the above case also said: "The judgment of the court is the pronouncement of the judge upon the issue submitted to him. When spoken, it is the court's judgment. Necessarily, the giving of the judgment must precede its historical engrossment. The clerk of the court executes the mechanical act of recording in some manner so as to give permanence to the evidence of the judgment that the court has delivered."

Any judgment or decree which finally disposes of the issues between the parties to an action and finally settles and adjudicates all the rights in controversy, is a final judgment. And when these things are done and court adjourns, the court is without authority to vacate or set aside the judgment.

"A decree which finally disposes of all of the issues raised between all the parties to an action, and finally settles and adjudicates all the rights in controversy, is final. * * * A decree is none the less final because some future orders of the court may become necessary to carry it into effect. * * * Nor because, when the merits of the controversy are adjudicated upon and the equities of the parties definitely settled and account is directed to be taken to ascertain what sum is due from one to the other as a result of the decision made by the court, or where, as a result of the judgment, the defendant or plaintiff is required to pay money in order to have it carried out and a subsequent order is necessary for the purpose of determining that the money had been paid and the conditions complied with." *Guaranty Trust & Savings Bank* v. *the City of Los Angeles,* 186 Cal. 110, 190 Pacific 35.

It has been said that it must be manifest that the record is not the judicial act. It is only historical. Its practical use is evidential.

As we have said, the chancellor concluded that an error had been made, and that the judgment that he had pronounced was improper because of the difference in the description of the notes in evidence and the description in the mortgage. And it was because, in his opinion, this was a vital matter that he undertook to vacate the judgment at the following term.

The chancellor was in error in holding that a reformation of the mortgage was necessary and in vacating or setting aside the judgment at the following term of court.

The statute provides: "The judgment must be entered in the order book and specify clearly the relief

granted or other determination of the action." Section 6276, Crawford & Moses' Digest.

We think that the entries in the order book specify very clearly the relief granted and the determination of the action.

"The rendition of a judgment is the judicial act of the court in pronouncing the sentence of the law upon the facts in controversy as ascertained by the pleadings and verdict or findings, as distinguished from the entry of the judgment, which is the ministerial act of spreading it at large upon the record. Upon its rendition, and without entry, a judgment is final, valid, and enforceable, as between the parties, in the absence of any statute to the contrary, although for many purposes entry of the judgment is also essential." C. J., vol. 34, 44.

"The custom of drawing a formal judgment and having the judge to sign it is usually observed, particularly where it contains special provisions requiring settlement by the court unless agreed upon by the parties. But, unless required by statute or rule of court, this is unnecessary." 34 C. J., 46.

"A decree becomes effective from the day of its rendition and not from the day of its entry on record." *Hollobauch* v. *Taylor,* 134 Ark. 415, 204 S. W. 628.

"Where a judgment or decree has been actually rendered but not entered on the record, in consequence of an accident or mistake, or the neglect of the clerk, the court has power, at a subsequent term, to order that the judgment or decree be entered of record *nunc pro tunc,* provided the fact of its rendition is satisfactorily established." *Kelley Trust Co.* v. *Lundell Land & Lbr. Co.,* 159 Ark. 218, 251 S. W. 680.

There are authorities to the contrary, but we hold that, when a decision has been reached, announced by the court and sufficient memorandum on the chancery docket to show a final settlement of the case, it is a final judgment, although it has not been spread in full upon the record. It becomes the duty of the court to require it to be spread upon the record.

This court has appellate jurisdiction only, except in cases specifically mentioned in the Constitution. And the Constitution gives this court appellate and supervisory jurisdiction over all inferior courts of law and equity. Section 4 of art. 7 of the Constitution.

This court, however, has no original jurisdiction to compel by mandamus a clerk of an inferior court to put a judgment or decree on record. The trial court itself has that authority. The chancellor in this instance has authority to direct the clerk of the chancery court. This court having no jurisdiction to issue a writ of madamus compelling the parties, other than the chancellor, to perform their duties as to recording judgments, the petition as to them is dismissed.

While it appears that the chancellor was in good faith trying to assist all parties in getting a proper valid judgment, we think that he made a mistake of law in holding that there was any necessity to reform the mortgage, and that he was mistaken in deciding that he had the right to set aside or vacate the decree after the term. Mandamus will therefore lie to compel the court to exercise its jurisdiction and power in having the judgment recorded.

It is therefore ordered that the clerk of this court issue a writ of mandamus, except as to the clerk and his deputy, in accordance with the prayer of the petition.