MORRISON, ADMINISTRATRIX *v.* NICKS.

4-8147                                    200 S. W. 2d 100

Opinion delivered March 10, 1947.

*Joseph Morrison,* for appellant.

*W. A. Leach,* for appellee.

SMITH, J. This case is a proceeding brought under the authority of Act 297 of the Acts of 1945, to have declared who are the heirs at law of G. W. Nicks. The following facts were either stipulated to be true, or were shown to be true by the evidence. Nicks died intestate August 25, 1934, and was survived by his wife, who died in 1945, and by four daughters and a son, named Lacie W. who departed this life in Chicago, Illinois, January 12, 1943.

Lacie married Elsie G. Watkins in Chicago on October 24, 1938. Elsie had previously been married to Eugene Watkins, and she married Lacie without obtaining a divorce, although the application for the marriage license which Lacie prepared, recited that she was a divorcee. She and Lacie lived together before their marriage, and two children were born to Elsie after her marriage to Lacie, while they were living together as husband and wife.

Birth certificates covering Elsie's first two children recite that Eugene Watkins was their father. These children were born while Elsie and Lacie were living together, but before their marriage. Birth certificates covering the two children born after Elsie's marriage to Lacie recite that Lacie was the father of those children. A fifth child was born to Elsie 13 months and 17 days after Lacie's death, and its birth certificate named Lacie as its father.

Elsie and Lacie lived together as man and wife until the time of Lacie's death, and they were living together as man and wife at that time, although she

testified that they had separated several times. The period of time of these separations is not shown.

The court found that G. W. Nicks' heirs were his four daughters and the two grandchildren who were born after Lacie's marriage, and from that finding and decree the administratrix of Nicks' estate and his four daughters have appealed. There is no cross-appeal.

To reverse this decree it is insisted that the two children declared to be heirs were born as the result of a bigamous marriage, inasmuch as Elsie married Lacie without being divorced from Watkins, her living husband, and it is urged that the law will presume that Watkins was the father of these children and not Lacie, inasmuch as Watkins' impotency or non-access was not shown.

There is a presumption, said to be one of the strongest known to the law, that children born to a couple lawfully married are the children of the husband, and that this presumption continues until overcome by the clearest evidence that the husband was impotent or without access to his wife, and the controlling question is whether that proof was made.

Appellant concedes under the authority of the case of *Evatt* v. *Miller,* 114 Ark. 84, 169 S. W. 817, L. R. A. 1916C, 759, that children born of a bigamous marriage may inherit from the father as well as from the mother. Section 4342, Pope's Digest, so provides. It reads as follows: "The issue of all marriages deemed null in law, or dissolved by divorce, shall be deemed and considered as legitimate." The State of Illinois, where the children were born, has a statute substantially the same as our § 4342, Pope's Digest, it being § 17a, Ch. 89, Marriages, Revised Statutes of Illinois, 1945.

The case of *Cooper* v. *McCoy,* 116 Ark. 501, 173 S. W. 412, reaffirmed the holding in the case of *Evatt* v. *Miller, supra,* the holding in each case being that children of a marriage void because the husband had a prior living wife, are legitimate and entitled to inherit from the

father, but that the statute shields only children born to parents whose marriage for any cause is null in law.

In the case of *Jacobs* v. *Jacobs,* 146 Ark. 45, 225 S. W. 22, Justice Hart said: "In the case of *Kennedy* v. *State,* 117 Ark. 113, 173 S. W. 842, L. R. A., 1916B, 1052, Ann. Cas. 1917A, 1029, which was a bastardy proceeding, the court held that where a child is born in wedlock it is presumed to be legitimate, but that this presumption may be rebutted by sufficient evidence showing that the husband was impotent or entirely absent at the period in which the child in the course of nature has been begotten so that he could not have had access to the child's mother. The rule is about the same on the subject of descent and distribution. The question of the legitimacy or illegitimacy of the child of a married woman is one of fact, resting upon decided proof as to the nonaccess of the husband. 2 Kent Comm. (14th Ed.) § 211."

It was held in the case of *Kennedy* v. *State, supra,* cited by Justice Hart that: "In the absence of a statute in express words making the mother competent to testify to the nonaccess of her husband, we hold that she can not do so. Under our statute, as we have seen, the mother is a competent witness. She may testify to facts which tend to prove that access on the part of her husband within the period of gestation was impossible, and if she testified to facts of that character there would be a question for the court or jury trying the issue to determine as to whether or not the presumption of legitimacy had been overcome. But, in this case, there is no such testimony. She does not testify to any fact that would warrant the conclusion that her husband did not have access within the period of gestation."

It was stipulated that if called as a witness, Elsie would testify that a short time after she and Watkins were married they separated, and that they did not thereafter live together, and when her deposition was taken she so testified and she further testified that Lacie was the father of all her children, but this, in the

course of nature could not have been true as to her fifth child.

Now while under the authority of the Kennedy case, *supra,* Elsie could not have testified as to non-access by Watkins, yet it was competent for her to testify as to facts and circumstances from which non-access by Watkins appears to be conclusively shown. It is true that Watkins and Elsie lived in Chicago when they separated, but it is not shown what became of Watkins, except that it is not contended that he is dead, or that he ever obtained a divorce from Elsie, but there is no contention that Elsie and Watkins ever lived together after their separation.

Elsie was first married to one Visminsky, from whom she was divorced, and on January 21, 1936, she married Watkins, but they soon separated and that separation was permanent. On October 24, 1938, she married Lacie W. Nicks in apparent conformity with the laws of Illinois. At that time she was the mother of two children, and she testified that Lacie was the father of both of them, and it is undisputed that after this marriage she continued to live with Lacie as his wife, except for several separations, the duration of which is not shown, until the time of his death.

The birth certificate of Elsie's children recite that Lacie was the father of the three youngest, but in the course of nature this could not be true as to her fifth child. However, as to the third and fourth child, the undisputed testimony is that they were born while Lacie and Elsie were living together as man and wife, they having been previously married, and these third and fourth children were given the names of members of Lacie's family.

No issue is presented as to the paternity of Elsie's first, second and fifth child, but we think the court was warranted in finding that Lacie was the father of the third and fourth children, and as they were born in wedlock, they are legitimate under the laws both of this State and the State of Illinois, and the decree will, therefore, be affirmed.