STILLEY *v.* STILLEY.

4-9652                                     244 S. W. 2d 958

Opinion delivered January 14, 1952.

*Milham & Weid,* for appellant.

ED. F. McFADDIN, Justice.  Appellant questions the correctness of a Chancery decree which sustained a demurrer and dismissed both her original complaint and amended complaint against appellee.  For convenience we will refer to the parties as they were styled in the trial Court.

On March 21, 1951, Myrtle Stilley, as plaintiff, filed her "Complaint in Equity" in the Carroll Chancery Court against McClory Stilley, as defendant, alleging: (a) that on December 15, 1950, plaintiff obtained a divorce decree from McClory Stilley in the District Court of Cowley County, Kansas; (b) that in said decree plaintiff was awarded the custody of five minor children of

the parties; (c) that in said decree McClory Stilley was ordered to pay plaintiff $50 per month for the support of the children; (d) that since January 4, 1951, plaintiff and the five children had resided in Carroll County, Arkansas; and (e) that McClory Stilley was in arrears in the sum of $175 on the said monthly support payments. A copy of the Kansas decree was exhibited; and the prayer of the complaint in the Carroll Chancery Court was:

"WHEREFORE, plaintiff prays that a citation be issued by this court against the defendant, to appear and show cause why, if any he has, that he is not in contempt of court for failure to pay said sums of money to plaintiff for support of said minor children."

While the said complaint was pending in the Carroll Chancery Court, the plaintiff, Myrtle Stilley, on April 9, 1951, also filed in the same cause a pleading entitled "Amended Complaint" which made no reference to the original complaint but stated:

"That plaintiff and defendant were unlawfully married in Eureka Springs, Arkansas, on the 17th day of May, 1941, and lived together as husband and wife until the ................ day of November, 1950, at which time they separated; that during said time there were born to plaintiff the following children: Floyd, a boy, 8 years old; Thelma, 6 years old; Dortha, 4 years old; Shirley, 3 years old; and Donnie, 2 years old.

"That on the date of said marriage plaintiff was under the age of fifteen years, and that said alleged marriage was illegal and absolutely void, and plaintiff desires that said marriage and all proceedings therein be by the court held to be void, annulled and of no effect.

"Wherefore, plaintiff prays that the alleged marriage be declared absolutely void, cancelled and forever held for naught, and that plaintiff be awarded the custody of the above named minor children. For any and all general and proper relief that in equity she may be entitled to."

On May 1, 1951, there was a hearing on the defendant's motion to quash service and also on defendant's

demurrer; and, at the conclusion of the hearing, the Carroll Chancery Court entered a decree dismissing both of plaintiff's complaints. Since no evidence was offered going to the merits of either of the complaints, we must necessarily conclude that the Chancery Court (a) treated the defendant's demurrer as going to both complaints and (b) dismissed them when plaintiff refused to plead further. We hold that the trial court was correct in so doing, because the original complaint, as well as the amended complaint considered with it, failed to state a cause of action for the consideration of the Carroll Chancery Court. We elucidate on this conclusion:

I. The Original Complaint merely prayed that the Carroll Chancery Court punish the defendant, McClory Stilley for the contempt that he was alleged to have committed against the Kansas District Court. The courts of one state do not punish for contempt committed against the courts of another state. In 17 C. J. S. 65, cases from many jurisdictions are cited to sustain these general rules:

"It is a well established rule that the power to judge a contempt rests exclusively with the court contemned, and that no court is authorized to punish a contempt against another."

Plaintiff could have filed suit in the Carroll Chancery Court on the Kansas judgment, as was done in *Tolley* v. *Tolley*, 210 Ark. 144, 194 S. W. 2d 687; but the plaintiff could not have the Carroll Chancery Court punish the defendant for contempt for failing to obey the orders of the Kansas court. Therefore, the original complaint, in praying that McClory Stilley be punished for contempt, failed to pray for relief affordable by the Carroll Chancery Court.

II. The "Amended Complaint" also failed to state a cause of action because it asked that the marriage between Myrtle Stilley and McClory Stilley be annulled, whereas the Kansas divorce decree showed that at all events the marriage of the parties had been ratified in that State.

Plaintiff relies on our case of *Ragan* v. *Cox,* 210 Ark. 152, 194 S. W. 2d 681 wherein we held that a marriage of a female under sixteen years of age and a male under eighteen years of age was "absolutely void". From that holding plaintiff argues that the marriage of Myrtle Stilley and McClory Stilley was "absolutely void" and could not be ratified by the participants even after a lapse of nine years and after five children had been born to the marriage. Such argument is evidently based on the refusal of the Arkansas courts to recognize a common-law marriage to be valid if performed within this State. Whether plaintiff would be correct in her argument if the parties had all the time. continued to live in Arkansas and never obtained a divorce, is a question we need not consider because other matters in the record make such consideration unnecessary. The pleadings, filed by the plaintiff, in this case show that the parties lived together as husband and wife in the State of Kansas, and that plaintiff obtained a divorce from the defendant in Kansas. Such divorce decree, dated December 15, 1950, recites that the plaintiff was then a resident of Kansas, and was thereby freed from "the bonds of matrimony" between herself and McClory Stilley. That a marriage, voidable because of infancy, can be ratified, was held in *Kibler* v. *Kibler,* 180 Ark. 1152, 24 S. W. 2d 867.

A common-law marriage is valid in Kansas. In *Smith* v. *Smith,* 161 Kans. 1, 165 Pac. 2d 593, the Supreme Court of Kansas, in an opinion of February 6, 1946, said:

"Under the provisions of our statute relating to domestic relations (G. S. 1935, 23-101 *et seq.*) common-law marriages in this state are not void, and marital rights acquired under such a marriage have been recognized in a variety of circumstances."

Arkansas recognizes common-law marriages that are valid in the State where the parties lived. Section 55-110 Ark. Stats. says:

"All marriages contracted without this State which would be valid by the law of the state or country in

which the same are consummated, and the parties then actually resided, shall be valid in all the courts of this state.''

See *Darling* v. *Dent,* 82 Ark. 76, 100 S. W. 747; and see also Leflar ''Conflict of Laws,'' § 131. When the parties lived together as husband and wife in Kansas they thereby contracted a common-law marriage in that State, even if the previous Arkansas marriage was void. In 55 C. J. S. 879, the cases are summarized in this language:

''As a general rule, continued cohabitation after the removal of an impediment to an invalid marriage which the parties contracted in good faith creates a valid informal or common-law marriage in jurisdictions which recognize such marriages.''

Therefore it appeared on the face of the plaintiff's pleadings that she was not entitled to claim any annulment of her marriage with the defendant since they had by ratification and by common law become lawfully married in the State of Kansas.

Conclusion: We affirm the Chancery decree in dismissing both of the plaintiff's complaints, but all of this is without prejudice to the plaintiff's right, if she so desires, to seek a money judgment for the arrearage of support, just as was done in *Tolley* v. *Tolley,* 210 Ark. 144, 194 S. W. 2d 687.

Mr. Justice ROBINSON not participating.

GEORGE ROSE SMITH, J., dissenting. The original complaint stated a cause of action. Pleadings are to be construed liberally on demurrer, but the majority are taking a very narrow view of the appellant's complaint. Her allegation that a certain amount of back alimony is due states a cause of action, and that should conclude our inquiry. It is true that the prayer asks that the defendant be punished for contempt, but this is civil contempt and is therefore remedial rather than punitive. What the plaintiff wants is payment of the debt, not the pleasure of seeing her former husband in jail. For that matter, the court could have held the defendant in con-

818

tempt by first entering a judgment of its own for the amount due; so the prayer was not altogether irrelevant. Finally, we have often held that it is the statement of facts and not the prayer for relief that governs; the court may grant whatever relief the facts warrant. *Grytbak* v. *Grytbak*, 216 Ark. 674, 227 S. W. 2d 633. Since this complaint states a cause of action, the badly worded prayer should be treated as surplusage.