Sharon STANDRIDGE, Guardian of Pamela Lynette Standridge *v.* Annie Louise Thacker STANDRIDGE

88-250 769 S.W.2d 12

Supreme Court of Arkansas
Opinion delivered May 1, 1989
[Supplemental Opinion on Denial of Rehearing
May 30, 1989.*]

*Holt, C.J., Hays and Glaze, JJ., would grant rehearing. Purtle, J., not participating.

*Young & Finley*, for appellant.

*Mobley & Smith*, by: *William F. Smith*, for appellee.

DAVID NEWBERN, Justice. This case arises from a contest in the probate court over who should be the personal representative and administrator or administratrix of a decedent's estate. The primary issue litigated was whether the appellee, Annie Louise Thacker Standridge, was divorced from her prior husband at the time she married Carroll Wayne Standridge. The answer to that question, in turn, determines whether Annie's marriage to Carroll was valid, and it may determine whether she was a proper personal representative of his estate. The trial court held Annie was Carroll's widow despite the fact that her divorce decree had not been entered in accordance with the provisions of Ark. R. Civ. P. 58 at the time she and Carroll participated in a marriage ceremony. We conclude the marriage between Annie and Carroll was invalid because her previous marriage had not been terminated by divorce at the time she purported to marry Carroll. Because a number of decisions made by the probate court may have hinged on its holding that the marriage between Annie and Carroll was valid, we must remand the case.

Annie was appointed administratrix over the objection of the appellant, Sharon Standridge. Sharon is Carroll Standridge's former wife and the mother of their daughter, Pamela Lynette Standridge, on whose behalf Sharon appeared. Sharon had sought the appointment of an independent administrator on the ground that Annie and Annie's son, Johnny Thacker, who had lived with Annie and Carroll, had interests in the decedent's estate which were in conflict with those of Pamela, and, therefore, Pamela's interest in the estate would suffer if Annie were appointed administratrix.

The primary asset of Carroll Standridge's estate was a wrongful death claim which resulted from Carroll's death in a motorcycle accident. The court approved a contingent fee contract between the estate and the law firm which pursued the claim

by which the firm would receive 33⅓% of an award upon settlement, 40% if litigation were required, and 50% in the event of an appeal. After the case had been filed in a United States district court, Annie negotiated a settlement. The estate was to receive some $470,000. The awards to the individual recipients were structured in various amounts over various time periods.

On behalf of Pamela, Sharon filed an objection to the proposed settlement. She pointed out that, although she had sought notice of any proposed settlement of the claim, no notice was provided to her. She objected to the 40% fee for the attorneys and contended that Annie Louise Thacker Standridge was entitled to no portion of the recovery because she was not legally the widow of Carroll.

The court ultimately approved the settlement after it was revised to give a greater share to Pamela than that which had first been negotiated.

### 1. Annie's divorce

The decree divorcing Carroll from Sharon was filed with the chancery clerk on October 5, 1984. On that same date, the chancellor heard the divorce proceedings between Terry and Annie Thacker, and he wrote on his docket book, "decree—a little unusual but it may work." Apparently the chancellor was referring to the fact that Terry Thacker was to have custody of the couple's daughter and Annie was to have custody of the son, Johnny. The daughter was afflicted with a disease known as lupus and required extensive medical support. There was no provision, other than medical insurance coverage, for support for Johnny, but Terry was given reasonable visitation rights.

On October 7, 1984, Carroll and Annie participated in a marriage ceremony. On October 24, 1984, the decree divorcing Annie and Terry Thacker was filed with the chancery clerk. Annie and Carroll were aware there was a "problem" with the validity of their marriage. She testified about the two of them having made several visits to Oklahoma because she and Carroll thought they would thus achieve a common law marriage. She said she and Carroll did not want to go through another ceremony because he did not want it to seem as an admission that they had not been married during the time they had lived together.

In support of his holding that the marriage was valid, the court cited *Parker* v. *Parker*, 227 Ark. 898, 302 S.W.2d 533 (1957), and *Pendergist* v. *Pendergist*, 267 Ark. 1114, 953 S.W.2d 502 (Ark. App. 1980). Both are cases which were decided in accordance with the law in effect prior to the adoption of the Arkansas Rules of Civil Procedure. The *Parker* case held that a pronouncement of divorce from the bench at the conclusion of the hearing effected the divorce. In the *Pendergist* case, the court of appeals noted that the controlling law in the future would be Rules 58 and 79 which would "at least" require a written docket entry of "it," referring to the judgment.

Since the adoption of the rules, this court has made it clear that a judgment or decree may not be effective until it has been "entered" as provided in Rules 58 and 79. The latter rule has now become Arkansas Supreme Court Administrative Order 2. The second paragraph of Rule 58 provides:

> Every judgment or decree shall be set forth on a separate document. A judgment or decree is effective only when so set forth and entered as provided in Rule 79(a). Entry of judgment or decree shall not be delayed for the taxing of costs.

Administrative Order 2, as did the former Rule 79(a), provides merely for the ministerial act of filing in the chancery docket book kept by the clerk. In *Childress* v. *McManus*, 282 Ark. 255, 668 S.W.2d 9 (1984), a chancellor held that a divorce announced from the bench at the close of a hearing was valid although the husband died before the decree was entered. The decree was reversed, and we held a divorce decree entered after the death of a party was a nullity. The failure to enter the decree in accordance with Rule 58 until after the death invalidated the decree.

Annie argues the *Childress* case and cases similarly decided by our court of appeals are distinguishable because they involve the death of a party, which is not involved here, and because they involve situations where there were or may have been issues left unresolved after announcement of the decree which, she contends, is not the case here. We see no significant difference between the case where a death occurs before entry of a decree and one where remarriage occurs before entry of a decree. In each case, the question is the same. Was the announcement of the

divorce from the bench sufficient to effect the divorce? We again say no.

Nor are we persuaded by the idea that in those cases there may have been issues remaining to be resolved. Although in the case before us now the support and property issues seemed to have been settled through Annie's testimony at the divorce hearing as to the parties' agreement, there is no telling what sort of objections one or the other of them might have upon seeing the decree in writing and being asked to approve it before entry. Our experience tells us there may always be outstanding issues until a written document is made the final instrument of the divorce and the divorce is made final at some definite point. The purpose of Rule 58 was to provide a definite point at which a judgment, be it a decree of divorce or other final judicial act, becomes effective. The rule tells clearly what that point is.

■ As Annie was not divorced at the time she married Carroll, their marriage was invalid. A statute, Ark. Code Ann. § 9-12-101 (1987), provides that a subsequent marriage may not be undertaken by a person not yet divorced from a living "former" spouse. We have held such a marriage to be "void," *Goset* v. *Goset*, 112 Ark. 47, 164 S.W. 759 (1914), and that is so even where one of the parties to the second marriage entered it in good faith. *Morrisson* v. *Nicks*, 211 Ark. 261, 200 S.W.2d 100 (1947); *Evatt* v. *Miller*, 114 Ark. 84, 169 S.W. 817 (1914). *See Yocum* v. *Holmes*, 222 Ark. 251, 258 S.W.2d 535 (1953). Note, 10 *Ark. L. Rev.* 188, 196 (1956).

### 2. Common law marriage

In his holding, the chancellor pointed out that the visits to Oklahoma amounted to no more than "window dressing," and we must agree. It is clear from Annie's testimony that, although one of the visits may have been made to find a place to live in Oklahoma, she and Carroll returned to Arkansas to conclude his employment here, and they did not "move" to Oklahoma or ever stay there for any considerable length of time.

Annie cites *Stilley* v. *Stilley*, 219 Ark. 813, 244 S.W.2d 958 (1952), for the proposition that this court will recognize a common law marriage validly contracted in a state where such a marriage is sanctioned. However, there, as in other cases where

we have recognized a common law marriage, the parties established a substantial relationship of long duration in the common law marriage state. In the *Stilley* case, for example, the parties stayed in Kansas, a common law marriage state, for nine years, and Mrs. Stilley bore five children there.

In *Walker* v. *Yarbrough*, 257 Ark. 300, 516 S.W.2d 390 (1974), we concluded that mere visits or sojourns of parties to a common law marriage state are insufficient to create a common law marriage recognized in Arkansas. We agree with the judge's apparent conclusion that the record here does not support a finding that a common law marriage was established between Annie and Carroll.

### 3. Nunc pro tunc

The chancellor who awarded the divorce entered an order on April 20, 1988, purporting to make it effective as of October 5, 1984. Annie argues the order was a proper application of the *nunc pro tunc* procedure because, again, the decree was effective upon its rendition. Courts are permitted to enter orders *nunc pro tunc* when the record is merely being made to reflect that which occurred but was not recorded due to the misprision of the clerk. A court may not, however, change the record to do that which should have been done but was not. *Canal Ins. Co.* v. *Arney*, 258 Ark. 893, 530 S.W.2d 178 (1975).

To argue that the purported *nunc pro tunc* decree was proper because it made the record reflect the decree was to be effective on October 5, 1984, only begs the question whether compliance with Rule 58 was necessary to make the decree final.

### Conclusion

Annie and Carroll were not married. We reverse and remand the case for proceedings consistent with this opinion.

HOLT, C.J., and HAYS and GLAZE, JJ., dissent.

TOM GLAZE, Justice, dissenting. In my view, the court is wrong in concluding Annie Standridge's marriage to Carroll Standridge was invalid. The court's decision is based on the premise that, at the time Annie married Carroll, Annie's divorce to her former husband, Terry Thacker, was not final. The

majority court reasons that, although the chancellor entered on his docket that the Thacker divorce was decreed, a separate written decree had not been filed or entered. Besides working an injustice to Annie Standridge and her now deceased husband, Carroll, I believe the court's decision will cause future problems and inequities, as well.

In support of its holding, the majority court cites Rule 58 of the Arkansas Rules of Civil Procedure which provides as follows:

> Every judgment or decree shall be set forth on a separate document. A judgment or decree is effective only when so set forth and entered as provided in Rule 79(a). Entry of judgment or decree shall not be delayed for the taxing of costs.

The court also notes Administrative Order 2, formerly ARCP Rule 79(a), which provides, among other things, for the trial court to enter the dates and substance of its orders or judgments in a docket book. The Administrative Order further requires that the court's clerk "keep a judgment record book in which shall be kept a correct copy of every final judgment or appealable order."

After noting Rule 58 and Administrative Order 2, the court construes them to mean that a court's order or judgment is not final and effective until the order or judgment is reduced to a separate written document which is filed or entered. The court places this construction on Rule 58 even though the Reporter's Notes clearly explain the rule should have little or no effect on prior practice, which recognized the trial court's decision to be final when it was *rendered*. The Reporter's Notes further state the following:

> 4.   This rule provides that a judgment or decree shall not be effective unless and until it is entered pursuant to Rule 79(a). *Thus for appeal purposes, the date of entry or filing of the judgment or decree is the effective date, as opposed to the date of rendition. Cranna v. Long*, 225 Ark. 153, 279 S.W.2d 828 (1955); *Wilhelm v. McLaughlin*, 228 Ark. 582, 309 S.W.2d 203 (1958). (Emphasis added.)

As can readily be seen above, the drafters of Rule 58 intended to clarify that, *for appeal purposes*, the date of entry or filing of the judgment or decree is the effective date, as opposed to

the date of rendition. This rule merely clarified and formalized prior case law on the subject, and was not intended to change prior practice. As already mentioned above, the prior, settled case law (and practice) recognized that decrees rendered in open court are effective from the date they are actually rendered, and not from the date of entry of record. *Parker* v. *Parker*, 227 Ark. 898, 302 S.W.2d 533 (1957). The *Parker* court, quoting from *McConnell* v. *Bourland*, 175 Ark. 253, 299 S.W. 44 (1927), said, "the rendition of a judgment is a judicial act on the part of the court, while the entry of a judgment is a ministerial act performed by the clerk."

The court's decision today clearly changes prior law and makes the formal filing of a judgment a judicial act rather than the ministerial act it truly is. The court's interpretation of Rule 58 will cause frustrations for trial judges and parties alike, since the finality of any decision made by the trial court will now depend upon when the attorneys prepare and return their precedents (orders, judgments or decrees) to the judge for signature and entry of record. As was the situation in the instant case, delays will inevitably occur between the time a judge renders his or her decision and when the written document is actually filed. Given this hiatus in time, one might even expect a party to assert a small amount of gamesmanship in order to obtain an advantage over an opposing party. All of this, I submit, is unnecessary and is based upon this court's erroneous interpretation and application of its own rule.

For the above reasons, I would hold that Annie Standridge was divorced from her former husband when she married her husband, Carroll. Her marriage to Carroll was valid, and this court commits a serious mistake by holding otherwise.

HOLT, C.J., and HAYS, J., join this dissent.

## SUPPLEMENTAL OPINION ON DENIAL OF REHEARING
## MAY 30, 1989

771 S.W.2d 262

PER CURIAM. Rehearing denied.

PURTLE, J., not participating.

HOLT, C.J., and HAYS and GLAZE, JJ., would grant rehearing.

TOM GLAZE, Justice, dissenting.

TOM GLAZE, Justice, dissenting. Appellee's petition for rehearing should be granted. I expressed my views in this cause in my earlier dissent and would generally write no further. *See Standridge* v. *Standridge*, 298 Ark. 494, 499, 769 S.W.2d 12, 15 (1989) (Glaze, J., dissenting). I choose to write again in this instance mainly because I recently discovered certain legal authority that further demonstrates how off-the-mark the court was in interpreting ARCP Rule 58 and in reversing the trial court's decision.

To summarize, this court held that appellee's, Annie Standridge's, marriage to Carroll Standridge was invalid because at the time of that marriage, the court determined Annie was still married to Terry Thacker. The majority concluded that, although the chancellor had entered on his docket that the Thacker divorce was decreed, a separate written decree had not yet been filed or entered when the Standridge marriage took place. The court construed Rule 58 and Administrative Order 2 to mean that a court's order, decree or judgment is not final and effective until it is actually filed.

In my dissent, I referred to the Reporter's Notes to Rule 58 which related that the Rule's drafters intended to clarify that *for appeal purposes*, the date of entry or filing of the judgment or decree is the effective date, as opposed to the date of rendition. Rule 58 of the federal rules of procedure has been construed to this same effect. Although I failed to mention it in my dissent, the Supreme Court, in interpreting FRCP Rule 58, stated that the *sole purpose* of the separate-document requirement was to clarify when the time for appeals begins. *Bankers Trust Co.* v. *Mallis*, 435 U.S. 381 (1978). Amplifying further, the Supreme

Court stated the following:

> The separate-document requirement was thus intended to avoid the inequities that were inherent when a party appealed from a document or docket entry that appeared to be a final judgment of the district court only to have the appellate court announce later that an earlier document or entry had been the judgment and dismiss the appeal as untimely. The 1963 amendment to Rule 58 made clear that a party need not file a notice of appeal until a separate judgment has been filed and entered. *See United States* v. *Indrelunas*, 411 U.S. 216, 220-222 (1973). Certainty as to timeliness, however, is not advanced by holding that appellate jurisdiction does not exist absent a separate judgment. If, by error, a separate judgment is not filed before a party appeals, nothing but delay would flow from requiring the court of appeals to dismiss the appeal. Upon dismissal, the district court would simply file and enter the separate judgment, from which a timely appeal would then be taken. Wheels would spin for no practical purpose.

In the *Mallis* case, the district court's decision, dismissing the action, had been recorded in the clerk's docket, but no separate judgment had been filed before an appeal was taken to the Court of Appeals. Nonetheless, the Court of Appeals decided the case on its merits and the Supreme Court held the Court of Appeals had jurisdiction to do so. *See also Wright & Miller, Federal Practice and Procedure: Civil* §§ 2781-2786 (1973). In sum, FRCP and ARCP Rules 58 establish that the appeal time commences when the court's judgment is filed; they are in no way intended to delay the effect of the court's decision once it is rendered.

To further emphasize the point, I note the case of *Bethlehem Mines Corp.* v. *United Mine Wkrs. of Amer.*, 476 F.2d 860 (3rd Cir. 1973). There, the district court held several hearings during which it *orally* continued a temporary restraining order enjoining a strike. Subsequently, the district court, finding Local 1368 violated the court's restraining order, held Local 1368 in civil contempt. On appeal, Local 1368 challenged the court's contempt order, contending the court's restraining order had never been set forth on a separate document as required by Rule 58, and

therefore the restraining order was ineffective. In holding the district court's failure to set forth its restraining order in a separate document did not preclude an adjudication of civil contempt, the Third Circuit Court of Appeals stated the following:

> Rule 58, however, was intended primarily to clear up the uncertainties of determining when, for the purpose of appellate review, there is a final, appealable judgment. In addition, the purpose of Rule 58 is to insure that parties know what is required of them, that the public has notice of the entry of judgments, and that an appellate court has sufficient information upon which to base its review.

> Under the facts of this case, none of these purposes of Rule 58 would be thwarted. There is no question involved of the time for filing an appeal or of any other matter dealing with an appeal. Defendant never attempted to appeal the granting of preliminary relief, nor has it alleged that it was in any way prevented from doing so. Moreover, the mere fact that the preliminary injunction was not in writing and set forth in a separate document has not been claimed, and, in the context of the present dispute, would not appear to prejudice anyone.

> The parties were present in court, either personally or by counsel, during the hearings on the temporary restraining order, when the preliminary injunction was granted, and also in subsequent conferences with the judge. Because the oral preliminary injunction simply continued the earlier temporary restraining order which was set forth in a separate document, the record makes clear that the parties were fully aware of the existence and content of the injunction. No objection was made by the defendant to the granting of injunctive relief, nor was any appeal ever filed. *Under these circumstances, we would be exalting form over substance if we were to hold that in failing to enter the preliminary injunction on a separate document, the district court thereby rendered itself powerless to adjudge violations in civil contempt.* (Emphasis added.)

*Bethlehem Mines Corp.*, 476 F.2d 860, 863 (citations omitted).

In the present case, the chancellor decreed Annie's divorce from Terry Thacker by entering it on the court's docket book. Both Annie and Terry understood they were divorced, no objection was made and no appeal was ever filed. The chancellor's decree included a custody award, and the chancellor's power to enforce the decree was not, and should not be, dependent upon a party or his or her attorney filing a separate document that merely reflects what the court previously decided. To give more effect to the separate-document requirement of Rule 58 was not intended and can only lead to a multitude of problems.

HOLT, C.J., HAYS, J., join in this dissent. PURTLE, J., not participating.