STATE of Missouri, ex rel. BUSH–CHENEY 2000, INC., Relators,

v.

Honorable Evelyn M. BAKER, Respondent.

State of Missouri, ex rel. Board of Election Commissioners, Relators,

v.

Honorable Evelyn M. Baker, Respondent.

No. ED 78707, ED 78708.

Missouri Court of Appeals, Eastern District. Writ Division Seven.

Dec. 6, 2000.

Mark Fernlund Hearne, II, Lathrop & Gage, St. Louis, for relator Bush–Cheney 2000, Inc.

Ira M. Young, Joseph V. Neill, St. Louis, for relator Board of Elections Commissioners.

Douglas Patrick Dowd, Dowd & Dowd, St. Louis, Robert Merrell Heggie, Beach, Stewart, Heggie & Mittleman, Clayton, for respondent Evelyn M. Baker.

CRAHAN, Acting Presiding Judge.

This opinion explains the reasons for the issuance of our November 7, 2000 peremptory writs of prohibition in this consolidated proceeding.[1]  Rule 84.24(1).

Relators Board of Election Commissioners of the City of St. Louis ("Board") and Bush–Cheney 2000, Inc., separately filed petitions with this court seeking to prohibit Respondent Judge Evelyn M. Baker, a Circuit Judge of the Circuit Court of the City of St. Louis, from enforcing her order directing the Board to extend the hours of voting at all City of St. Louis polling places until 10:00 p.m. on November 7, 2000 and to keep its headquarters open until 11:59 p.m. on the same date.  The Board alleged, *inter alia*, that there was no factual basis for the order, that the evidence presented to the court consisted entirely of rank hearsay, speculation and conjecture, that the parties bringing the underlying suit lacked standing and that the petition failed to state a cause of action for which the trial court could grant relief. Bush–Cheney 2000, Inc., an intervenor in the underlying suit, alleged that Respondent exceeded her jurisdiction by ordering that the polls remain open beyond the closing time dictated by the state statute.

Respondent's order was issued in a lawsuit filed against the Board on November 7, 2000, by Robert D. Odom, The Gore and Lieberman 2000 Committee, Inc., The William L. Clay, Jr. Campaign Committee and the Missouri State Democratic Committee (collectively "Plaintiffs").  Plaintiffs' petition alleged that Mr. Odom, a registered voter residing in the City of St. Louis, "has not been able to vote and fears he will not be able to vote because of the long lines at the polling places/machine breakdowns in St. Louis, Missouri, that have lasted for several hours."  The petition further alleged that "numerous" other voters in the City of St. Louis had been unable to exercise their constitutional right to vote due to the Board's failure "to properly provide enough voting booths, voting rolls, and all other supplies and equipment necessary and appropriate for the polling places," as required by sections 115.411 and 115.415 RSMo 1994.[2]  The petition further alleged that, due to the large turnout and an inadequate number of polling places, "many otherwise eligible voters will de facto be denied their right to vote" contrary to the United States and Missouri Constitutions. The petition requested an immediate hearing and an order granting an extension of voting hours until 10:00 p.m. in all locations.

On the afternoon of November 7, 2000, Respondent convened a hearing at which a number of witnesses testified.  At the conclusion of the hearing, Respondent entered

---

1.  On our own motion, we ordered these cases consolidated as No. ED78707.

2.  All further statutory references are to RSMo 1994.

her order extending the voting hours at all polling places in the City of St. Louis until 10:00 p.m. and ordering the Board to keep its headquarters open until 11:59 p.m. This proceeding followed.

■ We issued our peremptory writs of prohibition because Respondent lacks jurisdiction to extend the hours of voting established by state statute. Moreover, extension of the hours of voting would only permit voting by persons not entitled to participate and would do nothing to remedy the alleged problems identified in the petition.

Section 115.407 provides:

115.407 **Polls, hours to be open.**-The election judges shall open the polls at six o'clock in the morning and keep them open until seven o'clock in the evening. At seven o'clock in the evening, all voters at the polls, including any in line to vote, shall be permitted to vote.

■ Unless constitutionally infirm, the courts of this state are obligated to follow and apply the law as written by the legislature. *State v. Burns*, 978 S.W.2d 759, 761 (Mo. banc 1998). Respondent made no finding that section 115.407 was unconstitutional either as written or as applied.

Nor did Plaintiffs make any such allegation. It is obviously within the legislature's power to specify the hours in which voters are to cast their ballots.[3]

Moreover, pursuant to the second sentence of the statute, anyone in line when the polls close must be permitted to vote. Although the lines may be long and the number of working machines less than desirable, anyone in line at seven o'clock will eventually be permitted to vote no matter how late the hour and their vote will count.[4] If any voters in line at seven o'clock are unwilling or unable to stay and vote, their inconvenience will not be lessened by extending the hours in which new voters can join the line. Extending the hours of voting simply permits voting by persons not entitled to vote due to their failure to come to the polls on time. Respondent has no authority to authorize voters who did not come to the polls during the hours established by the legislature to participate in the election.[5]

We recognize that in the heat of a closely-contested election campaign, trial judges may be called upon to make difficult decisions with little time for deliberation. Where fundamental rights are at stake,

---

3. Plaintiffs' petition made no allegation of fraud or intentional failure to provide sufficient voting equipment as required by section 115.411. Thus, we need not address what remedies might be available under those circumstances. Likewise, we need not address what effect the failure to abide by the legislature's directive as to voting hours might have in any election contest. *See, e.g., State ex rel. Memphis v. Hackman*, 273 Mo. 670, 202 S.W. 7, 14 (1918)(characterizing statute as directory rather than mandatory).

4. In *Armantrout v. Bohon*, 349 Mo. 667, 162 S.W.2d 867, 872 (1942), the Missouri Supreme Court held that allegations that voters stood in long lines for a great length of time and that some voters went home without voting were insufficient to sustain an election contest. If such allegations were insufficient to justify setting aside the result and ordering a new election, they are plainly insufficient to support an order extending the hours of voting beyond those established by the legislature.

5. Although not mentioned in the petition, a memorandum filed in the trial court by intervenor Bush–Cheney 2000, Inc., discusses a complaint by Plaintiffs that one reason the voting process was taking too long was that some voters' names had been removed from the lists of registered voters maintained at the polling places because they had not voted recently and failed to respond to mailings from the election authority. The Board is required by law to update its lists of registered voters using various methods specified in the statutes. *See, e.g.,* sections 115.179–221. If properly registered voters are mistakenly removed, the law sets forth a relatively informal procedure for restoring voters to the election rolls either by the Board or by the circuit court. Sections 115.193.4, 115.223. In any event, extending the voting hours would do nothing to speed this process or otherwise address these concerns; it would simply permit voting by persons not entitled to vote due to their failure to come to the polls on time.

such pressures are magnified. But commendable zeal to protect voting rights must be tempered by the corresponding duty to protect the integrity of the voting process. Courts should not hesitate to vigorously enforce the election laws so that every properly registered voter has the opportunity to vote. But equal vigilance is required to ensure that only those entitled to vote are allowed to cast a ballot. Otherwise, the rights of those lawfully entitled to vote are inevitably diluted.[6]

KATHIANNE KNAUP CRANE and GEORGE W. DRAPER III, JJ., concur.

---

**6.** It is probably impossible to know how many voters were improperly permitted to cast a ballot after the polls should legally have been closed. This problem could have been avoided by sequestering the ballots of anyone permitted to cast a ballot after the polls should have been closed, pending review by this court. Such a procedure would remove any doubt about the integrity of the outcome.