REPUBLICAN PARTY of ARKANSAS and Sally Stevens,
A Member of the Pulaski County Election Commission *v.*
The Honorable Collins KILGORE, Pulaski County Circuit Court,
Thirteenth Division; Gus Wingfield; Democratic Party of Arkansas;
Pulaski Circuit/County Clerk, Carolyn Staley; and
Pulaski County Board of Election Commissioners

02-1181 98 S.W.3d 798

Supreme Court of Arkansas
Opinion delivered November 7, 2002

*Andrew J. Russell III*, and *Quattlebaum, Grooms, Tull & Burrow PLLC*, by: *Leon Holmes*, for petitioners.

*Robin J. Carroll*, and *Pulaski County Attorney's Office*, by: *Karla M. Burnett*, for respondents.

P ER CURIAM. Petitioners, the Republican Party of Arkansas and Sally Stevens, a member of the Pulaski County Election Commission, have filed an Emergency Petition for Writ of *Certiorari* in this court on November 6, 2002. The stated purpose of the petition for *certiorari* is to void the Emergency Order to Extend Voting Hours filed by Circuit Judge Collins Kilgore at 6:45 p.m. on November 5, 2002.

The Emergency Order reads as follows:

> Upon consideration of the petition for an emergency order to extend voting hours and in light of exigent circumstances involved that threaten the effective disenfranchisement of voters, it is hereby ORDERED that the Pulaski County Board of Election Commissioners shall extend voting hours until 9:00 p.m. in all locations in Pulaski County, Arkansas. Any voter still in line at 9:00 p.m. shall be permitted to vote. Ballots shall be provided immediately. All polling places are to be informed of this Order immediately, and the news media are requested to publicize this extension.

That order granted the petition of plaintiffs, Gus Wingfield and Democratic Party of Arkansas, which alleged that:

- Pulaski County Circuit Clerk Carolyn Staley neglected to ensure that necessary voters lists had been distributed to the precincts.

- Sufficient voting booths, voting rolls, and other supplies and equipment were not provided for the polling places, including ballots that had been depleted at three specific polling places.

- State law requires the Board of Election Commissioners to provide sufficient voting booths, voting machines, supplies, and equipment.

- Numerous Pulaski County voters were unable to exercise their constitutional right to vote.

- Immediate action was necessary to protect the right to vote for all properly registered voters, and failure to take action would result in irreparable harm.

The plaintiffs prayed for an immediate hearing, extension of voting hours to 10:00 p.m., delivery of necessary ballots, and all other just and proper relief. As already noted, the Emergency Order entered by the judge extended the voting hours to 9:00 p.m.

The record filed in this court reveals that no testimony was taken and no evidence was presented in support of the allegations made in this petition. No parties other than Gus Wingfield and the Democratic Party of Arkansas in the form of counsel appeared before Judge Kilgore. No other parties were notified of that hearing.

The Emergency Petition for Writ of Certiorari memorializes the arguments made to six members of this court by conference call at approximately 8:00 p.m. on November 5, 2002. Justice Tom Glaze of this court did not participate. The conference call took place at the request of Leon Holmes, counsel for the Republican Party. Participating in the conference call with Mr. Holmes and the six justices of this court was Robin Carroll, counsel for Gus Wingfield and the Democratic Party of Arkansas. Both counsel made their views known to the court.

Mr. Holmes, as counsel for the Republican Party of Arkansas, argued that Judge Kilgore had no authority to extend voting hours and that to do so was an abuse of discretion and violated the Equal Protection Clause of the United States Constitution. He cited the court to a Missouri Court of Appeals' case and *Bush v. Gore*, 531 U.S. 98 (2000), in support of his argument. Mr. Carroll

argued that registered voters had a constitutional right to vote and they were being deprived of this right. Members of the court asked questions to counsel for both parties.

Counsel for the parties then allowed the six justices to conference the case in private. The justices discussed the case by conference call, and a vote was taken. The six justices voted to void Judge Kilgore's Emergency Order. Counsel for the political parties were advised of this decision at approximately 9:00 p.m. Mr. Holmes was advised to file his petition for relief in the morning.

■ This court has jurisdiction in matters where a trial judge has plainly, manifestly, and clearly committed a gross abuse of discretion and acted in excess of his authority. *See Arkansas Democrat-Gazette v. Zimmerman*, 341 Ark. 771, 20 S.W.3d 301 (2000); *Arkansas Public Defender Comm'n v. Burnett*, 340 Ark. 233, 12 S.W.3d 191 (2000).

■ This court is cognizant of the fact that it cannot act officially until a pleading is filed and a record is lodged with the clerk of this court. At 9:00 p.m. on November 5, 2002, neither had been done. This court is further cognizant of our Arkansas Rule of Civil Procedure 58 which reads, in pertinent part:

> Every judgment or decree shall be set forth on a separate document. A judgment or decree is effective only when so set forth and entered as provided in Administrative Order No. 2. Entry of judgment or decree shall not be delayed for the taxing of costs.

Ark. R. Civ. P. 58. *See also Standridge v. Standridge*, 298 Ark. 494, 769 S.W.2d 12 (1989). The same policy, as set forth in Rule 58, holds true for orders of this court for extraordinary circumstances such as confronted us in the case at hand.

During the morning of November 6, 2002, the Emergency Petition for Writ of Certiorari and a partial record were filed by petitioners. Responses from the respondents were requested by close of business on this same day. As noted above, the Emergency Petition memorializes the arguments made to six members of this court on the evening of November 5 by counsel for the Republican Party.

As requested by this court, both the Pulaski County respondents and Gus Wingfield and the Democratic Party filed responses to the Emergency Petition on the afternoon of November 6, 2002. The Pulaski County respondents, Pulaski County Circuit/County Clerk Carolyn Staley, Pulaski County Election Commissioner Charles King, and Pulaski County Election Commissioner Elizabeth Smith, stated in their response that on November 5, 2002, at 7:21 p.m., a copy of the Emergency Order extending the voting hours was received. Election Commission staff attempted to contact all 124 polling precincts, but were unable to do so. At 9:20 p.m., the Commission received notification that this court had voided the Emergency Order. The Commission then set aside all ballots that could be identified as being cast by voters arriving after the 7:30 p.m. statutory closing time. Those ballots that could not be distinguished as "late" were counted in the ordinary course of business. The Pulaski County respondents request that this court provide clarification as to the action to be taken with the ballots set aside.

Gus Wingfield and the Democratic Party respond that this court is without jurisdiction to hear this petition in that the petitioners have failed to file a notice of appeal. Assuming jurisdiction, they assert that their *ex-parte* Emergency Petition was permissible without notice to the petitioners because irreparable harm might have resulted due to voters being denied the ability to vote. They further argue that the circuit court had the authority to fashion equitable relief to prevent the disenfranchisement of thousands of Pulaski County voters and that no other evidence is before this court that voters in other counties were disenfranchised.

■ Our election law is clear that the polls open at 7:30 a.m. on the day of the election and close at 7:30 p.m. *See* Ark. Code Ann. § 7-5-304 (Repl. 2000). Persons who have presented themselves for voting and who are in line at the polling place to do so when the polls close are permitted to vote. *See* Ark. Code Ann. § 7-5-314(c) (Repl. 2000). The legislative branch of our state government has spoken on this issue, and there is no provision in our Election Code authorizing an extension of voting times by the judiciary. No argument was made that these statutes

are unconstitutional, and Judge Kilgore made no finding to that effect. The Missouri Court of Appeals has held to the same effect, when reviewing a comparable statute and factual situation in that state, and noted the lack of jurisdiction in the trial court to extend the hours of voting fixed by law. *See State ex rel. Bush-Cheney 2000 v. Baker*, 34 S.W.3d 410 (Mo. Ct. App. 2000).

In sum, the oral decision made the night of November 5, 2002, that Judge Kilgore's order was void is now final as of the filing of this *per curiam* order today with the Supreme Court Clerk, following the filing of the Emergency Petition, the record, and the responses of respondents. Accordingly, we hold that Judge Kilgore clearly abused his discretion and exceeded his authority in extending the voting hours to 9:00 p.m. in contravention of state law. There is no need for this court to address the Equal Protection argument. Judge Kilgore's order is void. The petition for writ of *certiorari* is granted.

HANNAH, J., concurs.

GLAZE, CORBIN, and IMBER, JJ., dissent.

JIM HANNAH, Justice, concurring. I concur in the conclusion that our law is clear that there is no provision in our election code for the judiciary to extend the time the polls are open. On this basis, Judge Kilgore's order is void. Therefore, the writ of *certiorari* is properly granted.

However, when this matter was taken up on November 5, 2002, I had and expressed concerns that this matter should be heard post-election. Nonetheless, this matter was presented as an emergency petition and has been decided. I write separately to express my concern about the precedent this case may set.

Nothing in this decision declares any votes illegal. However, the issue in this case was whether votes were being cast that were unlawful. By the time this court reached a decision, it was too late to get word to the polls before they closed under Judge Kilgore's order. Therefore, this case might have been heard after the election.

I also write to express my concern that the dissenting opinions appear to argue that without the lodging of a transcript and the filing of the proper pleading in this court during business hours, this court is without jurisdiction to act.

Amendment 80 of the Arkansas Constitution provides in part:

§ 2. Supreme Court.

\* \* \*

(D) The Supreme Court shall have:

(1) Statewide appellate jurisdiction;

\* \* \*

(5) Only such other original jurisdiction as provided by this Constitution.

(E) The Supreme Court shall have power to issue and determine any and all writs necessary in aid of its jurisdiction and to delegate to its several justices the power to issue such writs.

\* \* \*

§ 3. Rules of pleading, practice and procedure.

The Supreme Court shall prescribe the rules of pleading, practice and procedure for all courts; provided these rules shall not abridge, enlarge or modify any substantive right and shall preserve the right of trial by jury as declared in this Constitution.

§ 4. Superintending control.

The Supreme Court shall exercise general superintending control over all courts of the state. . . .

Ark. Const. amend. 80, §§ 2-4.

The dissents argue that we, by rule, have limited our jurisdiction to such matters as may be filed during business hours. In *Ex Parte Dame*, 162 Ark. 382, 385, 259 S.W. 754 (1923), this court stated, "The jurisdiction of each of the courts in our system is a matter of constitutional control, as each derives its several powers from the Constitution, or at least, is controlled by constitutional

limitations." While the rules cited by the dissents clearly provide procedure that those seeking redress before this court are expected and required to follow, I think it is a dangerous thing to assert that this court is without jurisdiction. If the unusual case requires consideration in the night to avoid irreparable injury or wrong that will be inflicted before the next business day opens, this court should hear the matter. The case before us may not have presented such an impending injury or wrong, but a future case may. As the dissents pointed out, this is a deliberative body and the matter should have been considered as an election contest. It is not difficult to envision events that might require hearing a matter after it is too late to file or lodge anything with this court. A case in which a person is about to be executed might well present such a case. Other similar cases could be easily envisioned.

The trial judge was presented with an emergency situation where people were trying to vote, but were unable because of a lack of ballots. The trial judge acted as he should have in trying to fashion a remedy on very short notice. The problem is the trial judge was without jurisdiction to extend the closing time of the polls. Ark. Code Ann. § 7-5-314(a) (Repl. 2000). Clearly the polls could have remained open until those present to vote at 7:30 p.m. cast ballots, even if they had to wait for additional ballots to be delivered to the polls. See Ark. Code Ann. § 7-5-314(c) (Repl. 2000).

Tom Glaze, Justice, dissenting. In this case, a Pulaski County Circuit Court signed an emergency order extending voting hours to 9:00 p.m. on the night of the November 5, 2002, General Election. No petition for this relief had been filed with the Pulaski County Clerk, which is required to commence an action as mandated by Ark. R. Civ. P. 3. Moreover, no notice was given to all necessary parties who had an interest in this action. The circuit court's order can be appealed or reviewed by this court only after the judge had his order filed and entered with the Pulaski County Clerk's office. See Ark. R. Civ. P. 58 and Ark. R. App. P.—Civ. 4, which provide that an appeal filed prior to the entry of a final judgment or order is filed with the clerk of the trial court that tried the claim; see also Administrative Order

No. 2, which reads that, for appeal purposes, a court's order is effective only when the order is filed with the clerk's office.

None of these rules were complied with. Instead, the Republican Party of Arkansas petitioned this appellate court, seeking to have us void the trial court's order extending the hours of the election. The Republican Party, without any record or petition filed with the supreme court clerk, asked this court for an oral argument to present why the trial judge was wrong. Six members of this court gave the Republican Party and the Democratic Party of Arkansas an audience at about 9:00 p.m., November 5, so that they could argue the merits of the validity of the trial court's order. The Pulaski County Board of Election Commissioners, the Pulaski County Clerk, and the voters were not represented when this court allowed the Republican and Democratic parties the opportunity to present oral argument via a telephone conference call. Neither party filed a written order, notice of appeal, or record for this court to review. In short, nothing was filed with this court in order for it to review the trial court's unfiled order now on appeal.[1] *See* Ark. R. App. P.—Civ. Rules 3 and 4. This court simply had no jurisdiction of the appeal of the trial court's order. *See also* Ark. Sup. Ct. R. 6-1, regarding special proceedings, which provides that petitions for writs of prohibition, certiorari, or mandamus give this court jurisdiction when pleadings with certified exhibits from the trial court are filed with this court's clerk.[2] Nevertheless, the majority court proceeded to review and hear arguments on the trial court's order, and then decided the trial court erred, thus voiding the lower court's order.

---

[1] In the telephone conference call, the parties mentioned the case of *State ex rel. Bush-Cheney 2000, Inc. v. Baker*, 34 S.W.3d 410 (Mo. Ct. App. 2000), as controlling here. However, that opinion dealt with an election matter that was initiated by the filing of petitions seeking to prohibit enforcement of a trial judge's order. Our case substantially differs because the parties here did not comply with our rules of civil and appellate procedure.

[2] At the time of this writing, November 6, 2002, the Republican Party and Sally Stevens, a member of the Pulaski County Election Commission, have for the first time filed an emergency petition for writ of certiorari and a brief; however, the trial court's and this court's oral and unfiled orders were issued on November 5, and cannot be offered to establish a basis to rectify this court's lack of jurisdiction when it rendered its oral decision of November 5.

In doing so, this court violated every relevant appellate rule it has in order to render its *oral* decision.

Nothing was ever filed on November 5 to allow the court jurisdiction to review this matter. Never in this court's history since 1836 has this court heard and decided an appeal or petition for a writ without the parties having filed a notice of appeal, record, and briefs so the court could deliberate properly to consider both the merits of the lower court's decision and its authority to have decided the case in controversy.

Quite candidly, it appears the lower court, the parties, and this court got caught up in emotions in trying to obtain some type relief in an election which exhibited problems and allegations of irregularities. However, this court is a deliberative institution designed to bring issues into focus and render thoughtful decisions that bring such issues to a reasoned conclusion. In the instant case, this court clearly should have refused to review the validity of the trial court's order because this court had no jurisdiction to do so. Of course, the lower court's order would have allowed voters to cast ballots after the statutorily required time at 7:30 p.m. However, if the votes cast after the 7:30 p.m. deadline were found to be illegal, those votes could subsequently be contested, purged, or not counted. *See* chapter 5, subchapter 8, of Title 7 of the Arkansas Code, setting out the procedures for election contests. On the other hand, since this court overturned the trial court's order, those voters who appeared at 7:30 p.m. or afterwards are unidentifiable, as well as disfranchised.

I would be remiss if I did not point to our recent ballot title case of *Ward v. Priest*, 350 Ark. 462, 88 S.W.3d 416 (2002), where this court said the following:

> This case is like *McCuen v. Harris*, 318 Ark. 522, 891 S.W.2d 350 (1994), in which we denied a motion for expedited review where the motion and brief were presented to this court just five days prior to the election. We stated that such time limitations would not only be unfair to the appellee, it would also not give this court the time needed for deliberation of the issue or issues to be presented. *Id.; see also Stilley v. Young*, 342 Ark. 378, 28 S.W.3d 858 (2000); *Mertz v. States*, 318 Ark. 239, 884 S.W.2d 264 (1994).

While I remain confident that this court's members meant well when handing down its oral decision in this case, the majority court totally ignored our rules and cases that are clearly intended to permit expedited appeals and extraordinary proceedings in a manner that would give us the time, records, and briefs to render a well-reasoned opinion. This case sets a dangerous precedent, and our court should confess it made a mistake and rectify it immediately.

Because this court did not have jurisdiction to issue its November 5, 2002, oral order voiding the trial court's order, any further petitions and arguments filed to "memorialize" the November 5 proceeding before this court should be dismissed. This entire matter is one that must first be decided by a trial court. There, all factual allegations and legal arguments can be tried, and, if any party is dissatisfied by the trial court's rulings, a proper and timely appeal can be had. Requesting a writ of certiorari before this court after the election is over is not the correct remedy. Again, an election-contest proceeding is the vehicle to raise the election issues, and a writ of certiorari in this court is not proper.

DONALD L. CORBIN, Justice, dissenting. I completely and wholeheartedly agree with the dissent filed by Justice Glaze, the sole member of this court who did not act upon the oral motions made by the Democratic and Republican parties in this case. I write separately to state that although I initially questioned the way in which this matter was being allowed to proceed, contrary to our well-established rules, I ultimately went along with the majority and cast my vote based on the oral motions of the parties, despite the fact that I had no information or applicable law before me.

After considerable reflection on this matter, I believe that I have an obligation to inform the people of this state that I acted improvidently in this matter, and I am truly embarrassed. The long-standing rules of this court were completely ignored by both parties involved in this matter, as well as the members of this court, including myself. I now know that I should have maintained my initial position of doubt and that I should have refused to cast any vote on the issue until the matter was properly before this court. It is easy to get swept up in the frenzied pace of election-night emergency petitions. However, at the time that we cast

our votes to void the circuit court's order, the matter was actually moot, because the extended voting hours authorized by the circuit court had already expired. Thus, ironically, this court's hasty action was completely unnecessary.

I share Justice Glaze's concern for the dangerous precedent that this case creates. It is my hope that by writing separately to confess the mistake I made, future parties will not view this case as precedent.

Having now had the benefit of reviewing the pleadings filed by the parties in this matter, I take no issue with the majority's decision to void the circuit court's order. I can certainly empathize with the predicament that Judge Kilgore found himself in on election night, and I have no doubt that his order was based on good intentions and a legitimate concern that the voters of Pulaski County were being disenfranchised. However, I believe that Judge Kilgore went beyond his authority in extending the voting hours.

Additionally, I write separately to emphasize the fact that the parties and the media have misinterpreted our decision in this case. As I read the decision handed down today, this court has merely entered an order declaring the circuit court's order void. Our order does not address the issue of what to do with those ballots cast after 7:30 p.m. Thus, contrary to what many members of the media have stated, this court has not declared that all votes cast after 7:30 shall not be counted. The reason that we make no ruling on that issue is that there are proper procedures to follow to challenge the counting of particular votes. Hence, any person wishing to make such a challenge should refer to our Election Code, *see* Ark. Code Ann. § 7-8-101 to -307 (Repl. 2000 and Supp. 2001), for the proper procedures to undertake.

ANNABELLE CLINTON IMBER, Justice, dissenting. The *per curiam* opinion and Justice Glaze's dissenting opinion (issued on November 6, 2002) accurately recite how this matter came to be considered by the Supreme Court. Upon further reflection, and with great respect for each justice's individual vote in this matter, I must withdraw my oral vote of November 5, 2002, and dissent for lack of jurisdiction. This court is a deliberative body whose function in large part is to review records, consider legal arguments, and determine if error resulted in the trial

court proceedings. *Dean v. Williams,* 339 Ark. 439, 6 S.W.3d 89 (1999). All of our procedural rules, including those for petitions for extraordinary relief and expedited consideration, require a filing with the Supreme Court in order to invoke the court's jurisdiction. *See* Ark. Sup. Ct. R. 6-1(a).

In this case, when six members of the court voted orally to void the trial court's order, we did so without any record to review. We were only apprised of the situation by the attorneys' oral representations during a conference call on the night of the November 5 election. The six justices then considered the legal arguments and rendered a decision orally in less than twenty minutes. Even under these extraordinary circumstances, I am unable to ignore our rules of appellate procedure and jurisdiction in order to rectify any error by the trial court, be it jurisdictional or otherwise.

For the aforementioned reasons, and with deep regret, I respectfully withdraw my oral vote of November 5, 2002, and dissent.